UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY VILLAGE PARTNERS, L.P.,

    Plaintiff,

    v.

CHEVRON U.S.A., INC., et al.,

    Defendants.

_____/

No. C 11-1597 PJH

**ORDER RE MOTIONS TO DISMISS, MOTIONS FOR A MORE DEFINITE STATEMENT, AND MOTIONS TO STRIKE**

Defendants' motions to dismiss certain claims asserted in the complaint, motions for a more definite statement, and motions to strike, came on for hearing before this court on July 27, 2011. Plaintiff Gregory Village Partners, L.P. ("Gregory Village") appeared by its counsel Jordan Stanzler; defendant Chevron U.S.A., Inc. ("Chevron") appeared by its counsel D. Kevin Shipp and Robert Goodman; defendant M B Enterprises appeared by its counsel Jack Provine; and defendant Central Contra Costa Sanitary District ("CCCSD" or "the District") appeared by its counsel Kenton Alm and Sabrina Wolfson.

Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions in part and DENIES them in part, as follows and for the reasons stated at the hearing.

**BACKGROUND**

Gregory Village owns real property located at 1601-1609 Contra Costa Boulevard in Pleasant Hill, California, known as the Gregory Village Shopping Center ("the Gregory Village property"). Gregory Village purchased the property approximately 10 years ago.

P&K Cleaners operated a dry cleaning plant on what is now the Gregory Village

property, from the mid-1960s through approximately 1991. As required by the Regional Water Quality Control Board, Gregory Village has been investigating soil and groundwater contamination that allegedly resulted from P&K Cleaners' use and disposal of solvents.

Gregory Village asserts that chlorinated solvents, including PCE (tetrachlorethene) and TCE (trichloroethylene) and their breakdown products, as well as petroleum hydrocarbons and related materials and their breakdown products, have been detected in groundwater and soil vapor on or near the Gregory Village property.

The Gregory Village property is located downhill from real property located at 1705-1709 Contra Costa Boulevard ("the Chevron property") which is currently owned by M B Enterprises. The Chevron property was originally two parcels ("the Northern parcel" and "the Southern parcel").

From approximately 1950 until 1986, Chevron (through Standard Oil) leased the Northern parcel from the owner. There was a service station on the parcel, and in 1971, Chevron removed the existing service station and constructed a new service station with an auto repair facility. Standard Oil/Chevron sub-leased the Northern Parcel to a third party, which operated the service station.

A dry cleaner was allegedly in operation on the Southern Parcel from at least 1981 until 1986. It is not clear from the complaint who the owner of the Southern Parcel was. According to Gregory Village, Chevron states that all dry cleaning equipment was removed from the Southern Parcel by December 1, 1986.

In December 1986, Chevron purchased both the Northern parcel and the Southern parcel. At that point, or shortly thereafter, Chevron combined the two parcels into a single parcel, which it sold to M B Enterprises in March 2003.

There is currently a Chevron service station located on the Chevron property. The service station is operated by M B Enterprises. Gregory Village asserts that chlorinated solvents and hydrocarbons and related products have been detected in groundwater and soil vapor on or near the Chevron property.

Gregory Village also alleges that pollution from the former dry cleaner (chlorinated

2

solvents) has been found in the groundwater on the Chevron property by Chevron's consultants, and that Chevron was aware of this pollution in 1986 when it purchased the two parcels, and that as of 1988, it was aware of chlorinated solvents in the soil vapor in the Chevron property.

Gregory Village asserts that Chevron began groundwater remediation for petroleum-related compounds in 1991, and that the remediation system was shut down in 1996. Nevertheless, according to Gregory Village, chlorinated solvents continued to be detected both on and off the Chevron property.

In December 2009, Gregory Village's consultant conducted an investigation of the groundwater and found high concentrations of chlorinated solvents, and also found petroleum hydrocarbons. On April 1, 2010, representatives from Gregory Village met with representatives from Chevron. At that time Gregory Village allegedly provided Chevron with information demonstrating the extent of the pollution.

The Chevron property connects with a sewer line that runs northward and downstream past the Gregory Village property, and into the residential neighborhood that lies to the north of the Gregory Village property ("the Neighborhood"). This sewer line was allegedly installed, and is owned and/or operated by, CCCSD. Gregory Village asserts that chlorinated solvents have been detected in groundwater and soil vapor in the Neighborhood, located north and west of the Gregory Village property. Gregory Village alleges that based on available data, the above-described sewer line is a source of these various off-site detections of pollution.

Gregory Village alleges that between 2005 and 2008, CCCSD performed a closed circuit television inspection of the sewer line between the Chevron property and the Neighborhood. This inspection showed that the sewer line had sags, root penetration, and at least one separated joint – all of which (according to Gregory Village) are areas in which leaks will continue to occur. Gregory Village also asserts that a key portion of the sewer line (near the Neighborhood) was never inspected. Gregory Village claims that CCCSD knew that dry cleaners and service stations were using the sewers to discharge hazardous

substances, and failed to use due care to ensure that hazardous substances were not released into the environment.

Gregory Village also alleges that as the owner and operator of a service station on the Chevron property, M B Enterprises has contributed to the contamination of the Gregory Village property and the Neighborhood by discharging petroleum products into the subsurface of the Chevron property through the normal course of its operation of a service station. Gregory Village claims that M B Enterprises has failed to make any effort to stop the migration of the PCE and TCE from the Chevron property into the Neighborhood.

Gregory Village filed this action on April 1, 2011, alleging 11 causes of action – (1) a claim under CERCLA § 107(a)(1-4)(B), 42 U.S.C. § 9607(a), against all defendants; (2) a claim under the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), against all defendants; (3) a claim for declaratory relief under federal law, against all defendants; (4) a claim seeking response costs under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), California Health & Safety Code § 25300, et seq., against M B Enterprises and Chevron; (5) a claim of comparable equitable indemnity under state law, against all defendants; (6) a claim of declaratory relief under state law, against all defendants; (7) a claim for attorneys' fees under California Code of Civil Procedure § 1021.5, against all defendants; and (8)-(11) common law claims of public nuisance; trespass; waste; and negligence, against all defendants.

All three defendants have filed motions to dismiss. Chevron argues that the CERCLA/HSAA, RCRA, nuisance, trespass, waste, and negligence causes of action should be dismissed for failure to state a claim, or, in the alternative, that the court should order Gregory Village to provide a more definite statement. Chevron also contends that the cause of action for attorney's fees should be stricken because Civil Procedure Code § 1021.5 does not create an independent cause of action; and that the prayer for attorney's fees and costs should also be stricken because fees and costs are not recoverable in actions brought under CERCLA and HSAA, and because the common law causes of action do not provide for recovery of attorney's fees.

4

M B Enterprises filed a joinder in Chevron's motion, and a motion seeking dismissal of all eleven causes of action asserted against M B Enterprises and Chevron (even though Chevron seeks dismissal of only eight of the eleven causes of action), or, in the alternative, a more definite statement, plus an order striking the prayer for attorney's fees and costs.

CCCSD seeks a more definite statement as to the CERCLA cause of action, and argues that the court lacks subject matter jurisdiction over the RCRA cause of action because Gregory Village did not comply with the 90-day notice requirement. CCCSD also contends that the RCRA cause of action fails to state a claim.

In addition, CCCSD argues that the trespass and waste claims are barred because CCCSD is immune under California Government Code § 815; that the nuisance, trespass, waste, and equitable indemnity causes of action fail because they are not pled with particularity as required under the California Tort Claims Act; that the equitable indemnity claim is premature because Gregory Village has not been served with a complaint giving rise to such a claim; that the nuisance and waste claims should be dismissed because they are inadequately pled; and that the nuisance claim also fails because it is untimely and seeks damages beyond the one-year period allowed under the California Government Code.

**DISCUSSION**

A.  Legal Standards

    1.  Motions to Dismiss (Rule 12(b)(1))

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods.,

Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, in the present action, petitioners bear the burden of demonstrating that subject matter jurisdiction exists over this complaint. See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

On a motion to dismiss pursuant to Rule 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. A defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial attack on jurisdiction, the court must accept the factual allegations in plaintiff's complaint as true. See Miranda v. Reno, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).

A motion to dismiss for lack of subject matter jurisdiction may also be a "speaking motion" in which the defendant actually challenges the existence of subject matter jurisdiction. In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Moreover, the plaintiff, who bears the burden of proof that jurisdiction does in fact exist, must establish jurisdiction with evidence from other sources. See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2011) § 9:86.

2.   Motions to Dismiss (Rule 12(b)(6))

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. Id. at 94. However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949-50 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. __, 129 S.Ct. at 1950.

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings, although the court may consider a matter that is properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

7

3.      Motions for a More Definite Statement (Rule 12(e))

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted" and therefore "cannot reasonably be expected to frame a proper response."  Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2008 ed.) § 9:347 (citing Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999); Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal. 1981)).

A motion for a more definite statement attacks intelligibility, not simply lack of detail. For this reason, the motion fails where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted.  Bureerong v. Uvawas, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996); see also Hubbs v. County of San Bernardino, CA, 538 F.Supp. 2d 1254, 1262 (C.D. Cal. 2008).

4.      Motions to Strike (Rule 12(f))

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted).  In order to determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.  Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

8

When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id. However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbot Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994)

1.   CERCLA/HSAA claims

Chevron and MB Enterprises argue that the CERCLA/HSAA claim should be dismissed because the complaint does not adequately allege that Chevron was an owner/operator of the Chevron property during the relevant time period. CCCSD seeks a more definite statement as to the CERCLA claim, arguing that it is unable to tell whether the claim is based on the allegation that pollutants were discharged into the District's sewer system from the Gregory Village property.

CERCLA imposes strict liability for environmental contamination upon specified entities. A plaintiff seeking to recover costs under CERCLA § 107 must establish four elements – (1) the site is a "facility;" (2) a "release" or "threatened release" of a hazardous substance from the facility has occurred; (3) the "release" or "threatened release" caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan;" and (4) the defendant is within one of four classes of persons subject to liability. 3550 Stevens Creek Assocs. v. Barclays Bank of Cal., 915 F.2d 1355, 1358 (9th Cir. 1990). A claim under the HSAA has the same elements as a claim under CERCLA. Adobe Lumber, Inc. v. Hellman, 658 F. Supp. 2d 1188, 1192-93 (E.D. Cal. 2009).

In the complaint, Gregory Village alleges that Chevron "leased, controlled and/or owned all or portions of the Chevron Property between 1950 and 2003." Cplt ¶ 8. Gregory Village asserts that Chevron is liable under § 107(a)(2), "as a former owner/operator of a Facility, the Chevron Property, at the time of the Releases." Cplt ¶ 61. Liability under § 107 may be imposed on, among others, "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances

were disposed of." 42 U.S.C. § 9607(a)(2). Chevron contends that the complaint fails to allege facts supporting the conclusory allegation that Chevron owned or operated the Chevron property at the time that hazardous substances were disposed there.

The complaint alleges that Chevron "is responsible for these Releases as a former owner/operator of a Facility, the Chevron Property, at the time of the Releases, pursuant to 42 U.S.C. § 9607(a)(2). Cplt ¶ 61. This is a legal conclusion, which is not entitled to a presumption of truth. See Iqbal, 129 S. Ct. at 1950-51. Moreover, the complaint alleges that Chevron did not own the Southern and Northern parcels until December 1986. Cplt ¶¶ 12-13.

The complaint does not clearly allege that a release of PCE or TCE occurred on the Northern Parcel between 1986 and 2003, the only period when Chevron owned that parcel – or that any PCE and TCE which may have been released on the Northern Parcel actually affected the Gregory Village Property or the Neighborhood – but only that PCE and TCE migrated from the "Chevron property" and entered the leaking sewer from the "Chevron property." Cplt ¶¶ 9, 29-30. Similarly, the releases of PCE and TCE from the Southern Parcel are alleged to have occurred before Chevron purchased that property, during the operation of the former dry cleaner. Cplt ¶¶ 11, 15.

Finally, the complaint does not allege that Chevron ever operated the gasoline service station on the Chevron property, but only that Chevron subleased or leased the Northern Parcel "to third party operator(s) who operated the service station/auto repair facility." Cplt ¶ 8. Nor does the complaint allege that Chevron operated the former dry cleaner that was removed from the Southern Parcel before Chevron purchased that parcel. Cplt ¶ 10.

As stated at the hearing, the motions are GRANTED, with leave to amend. The amended complaint must allege facts showing that Chevron was an owner or operator of the Chevron property during the relevant time period, and clarifying whether the claim against CCCSD is based on the alleged discharge of pollutants into the District's sewer system from the Gregory Village property.

2.     RCRA claim

Chevron and M B Enterprises contend that the RCRA cause of action must be dismissed because the complaint fails to sufficiently allege that Gregory Village provided the pre-filing notices required under 42 U.S.C. § 6972(b)(2)(A) and (F), and because it fails to provide sufficient facts to support the claim asserted against Chevron and M B Enterprises.  CCCSD argues that the court lacks subject matter jurisdiction over the RCRA claim because the notice letters did not include the information required to be included, and because Gregory Village failed to serve a copy of the complaint on the Administrator of the United States Environmental Protection Agency ("EPA") and on the United States Attorney General.  The motions are GRANTED in part and DENIED in part.

As an initial matter, the court finds, for purposes of the present Rule 12(b)(6) motion, that the complaint does not allege sufficient facts to state a claim under RCRA.  In <u>Hinds Investments, L.P. v. Angioli</u>, __ F.3d __, 2011 WL 3250461 (9th Cir., Aug. 1, 2011), the Ninth Circuit noted that "'RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste,'" and that its primary purpose is "'to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of waste'" in order to minimize the threat to human health and the environment.  <u>Id.</u>, 2011 WL 3250461 at *2 (quoting <u>Meghrig v. KFC W., Inc.</u>, 516 U.S. 479, 483 (1996)).

The court noted further that "contribute" commonly means "lend assistance or aid to a common purpose," "have a share in any act or effect," "be an important factor in," or "help to cause."  <u>Id.</u>, 2011 WL 3250461 at *3.  The court determined that the "contributed/contributing" language in RCRA requires that a defendant be actively involved in or have some degree of control over the waste disposal process to be liable under the statute.  <u>Id.</u>  In particular, "to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process."  <u>Id.</u>, 2011 WL 3250461 at *4.

11

The court finds that the Ninth Circuit's construction of "contributing to," taken together with the Supreme Court's admonition in Twombly and Iqbal that a pleading that offers "a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, quoted in Iqbal, 129 S.Ct. at 1949, mandates that Gregory Village plead the RCRA claim with sufficient facts in order to state a claim that is plausible on its face.[1]

With regard to whether the court has subject matter jurisdiction over the RCRA claim, the court finds that Gregory Village has adequately complied with the statutory notice requirements. Under § 6972(b)(2)(A),

> [n]o action may be commenced under subsection (a)(1)(B) [provision authorizing citizen suits against contributor] prior to ninety days after the plaintiff has given notice of the endangerment to –
>
> (i) the Administrator;
>
> (ii) the State in which the alleged endangerment may occur;
>
> (iii) any person alleged to have contributed to or be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section . . .

42 U.S.C. § 6972(b)(2)(A). The law is settled that giving pre-suit notice is a "mandatory condition[ ] precedent to commencing suit under the RCRA citizen suit provision." Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989); see also Covington v. Jefferson County, 358 F.3d 626, 636-39 (9th Cir. 2004).

Gregory Village asserts that it served the notices of intent to file suit required by RCRA, and attaches to its opposition papers copies of notices of intent to file suit against Chevron dated September 8, 2010, and November 17, 2010, copies of notices of intent to file suit against M B Enterprises dated October 8, 2010, and November 30, 2010, and copies of notices of intent to file suit against CCCSD dated September 14, 2010 and November 29, 2010. The notices reflect that copies were also sent to the EPA

---

[1] In addition, the court questions whether Gregory Village, if it prevails, will be entitled to an injunction to pay for future clean-up costs, but finds that that question is not appropriate for decision at this stage of the litigation.

12

1  Administrator, and the Regional Administrator of Region IX of the EPA, as well as to
2  California agencies, including the California Environmental Protection Agency, the
3  California State Water Resources Control Board, the California Integrated Waste
4  Management Board, and the California Natural Resources Agency.  All the notices were
5  sent well before the statutory deadline (90 days prior to filing suit), and the complaint
6  alleges that Gregory Village timely served the required RCRA notices.  See Cplt ¶¶ 40-43

7  Under § 6972(b)(2)(F), "[w]henever any action is brought under subsection (a)(1)(B)
8  of this section in a court of the United States, the plaintiff shall serve a copy of the
9  complaint on the Attorney General of the United States and with the Administrator."  42
10  U.S.C. § 6972(b)(2)(F).  The court agrees with Gregory Village that it would have been
11  impossible to allege in the complaint that the complaint had been served on the EPA
12  Administrator and the U.S. Attorney General, before the complaint had even been filed.
13  Moreover, the statute does not provide that service of the complaint on the EPA
14  Administrator and the Attorney General is a precondition to suit, just that a copy of the
15  complaint "shall be served."  While it is true that Gregory Village delayed the required
16  service on the EPA Administrator and the Attorney General until after the present motions
17  had been filed, it is also true that RCRA does not specify a particular time by which the
18  service must be completed.

19  Finally, the court finds that while Gregory Village did not strictly comply with certain
20  provisions set forth in the regulations implementing the RCRA notice requirements, which
21  appear at 40 C.F.R. part 254, that failure does not deprive the court of subject matter
22  jurisdiction.  For example, under 40 C.F.R. § 254.3, the notice

> shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 254.3(a).  The notices did not provide Gregory Village's address and telephone number – just the address and telephone number of its counsel – and also did not provide

13

precise "dates of the violation," or the exact "activity alleged to constitute a violation." Defendants contend that just as compliance with the statutory notice requirements is a prerequisite to filing suit under RCRA, so is compliance with the implementing regulations. As there appears to be no Circuit or Supreme Court authority on this question, defendants rely on cases interpreting the Clean Water Act and what defendants claim are almost identical notice requirements.

The citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, provides that no action may be brought prior to sixty days after the plaintiff has provided notice of the alleged violation to the EPA Administrator, the state in which the alleged violation occurred, and the alleged violator. 33 U.S.C. § 1365(b)(1). The statute adds that "[n]otice under this subsection [subsection (b)] shall be given in such manner as the Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b) (emphasis added). The regulations promulgated by the Administrator appear at 40 C.F.R. § 135.3, and include language regarding the content of the notices that is almost identical to the language in 40 C.F.R. § 254.3.

By contrast, in enacting RCRA, Congress did not expressly direct the EPA to promulgate regulations relating to the notice requirements of 42 U.S.C. § 6972(b)(2)(A).[2] Instead, the EPA promulgated regulations pursuant to § 6972 generally, in which it outlined "the procedures to be followed" and prescribed "the information to be contained in the notices." 42 FR 37214 (July 20, 1977); see also 42 FR 56114 (Oct. 21, 1977). Thus, while Ninth Circuit cases such as Center for Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794 (9th Cir. 2009), and Washington Trout v. McCain Foods, Inc., 45 F.3d 1351 (1995), have found that strict compliance with the CWA regulations is a prerequisite to suit, this court finds no indication by Congress that it intended that the applicable RCRA regulations apply with the same force. The court agrees with the courts that have

---

[2] Under § 6972(c), which provides that no action may be commenced under subsection (a)(2) (citizen suit against EPA Administrator), "[n]otice under this subsection [subsection (c)] shall be given in such manner as th Administrator shall prescribe by regulation." However, there is no similar provision governing actions under subsection (b).

14

concluded that strict compliance with the RCRA notice requirements is not a jurisdictional prerequisite, and finds that the notices served by Gregory Village included sufficient information regarding Gregory Village's intent to sue.

3.  Equitable indemnity claim

CCCSD argues that the claim for equitable indemnity should be dismissed as to the District, as premature under California Government Code § 901, because Gregory Village has not been served with a complaint giving rise to such a claim. The motion is GRANTED, based on the concession by counsel for Gregory Village at the hearing, that the claim is unripe and should be dismissed without prejudice, as to the District.

4.  Attorney's fees

Chevron and M B Enterprises seek an order striking the cause of action for attorney's fees, and the prayer for attorney's fees. For the reasons stated at the hearing, the motion is GRANTED as to the cause of action for attorney's fees, and is DENIED as to the prayer for attorney's fees.

5.  Public nuisance claim

Chevron and M B Enterprises argue that the cause of action for nuisance should be dismissed for failure to state a claim. In general, Chevron and M B Entreprises assert that this claim is not pled in accordance with the requirements of Rule 8, because the complaint makes broad allegations regarding the "Chevron property," but fails to allege facts supporting the elements of the claim.

CCCSD contends that the cause of action for nuisance fails because it is not pled with particularity as required under the California Tort Claims Act, see Shields v. County of San Diego, 155 Cal. App. 3d 103, 113 (1984), and also because it is untimely and seeks damages beyond the one-year period allowed under California Government Code § 911(a).

Under California law, a nuisance is defined as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code §

1  3479. "A public nuisance is one which affects at the same time an entire community or
2  neighborhood, or any considerable number of persons, although the extent of the
3  annoyance or damage inflicted upon individuals may be unequal." Id. § 3480.  The
4  complaint must allege damages "specially injurious to [plaintiff], but not otherwise."  Cal.
5  Civ. Code § 3493; see also Ileto, 349 F.3d at 1213 n.28.

6        Thus, to state a cause of action for public nuisance, a plaintiff must allege that a
7  defendant created (or had active involvement in creating) a condition that was harmful to
8  health or interfered with the comfortable enjoyment of life or property; that the condition
9  affected a substantial number of people at the same time; that an ordinary person would be
10 reasonably annoyed or disturbed by the condition; that the seriousness of the harm
11 outweighs the social utility of the defendant's' conduct; that the plaintiff did not consent to
12 the conduct; that the plaintiff suffered harm that was different from the type of harm
13 suffered by the general public; and that the defendant's conduct was a substantial factor in
14 causing the plaintiff's harm.  See Birke v. Oakwood Worldwide, 169 Cal. App. 4th 1540,
15 1548 (2009) (citing Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 2020); see
16 also City of Modesto Redev. Agency v. Superior Court, 119 Cal. App. 4th 28, 40-43.

17       The motion to dismiss for failure to state a claim is GRANTED, with leave to amend
18 to plead facts supporting the elements of the claim, as to each defendant, and plead the
19 facts with particularity as to the District, and also to allege compliance with the Tort Claims
20 Act as to the District.  In addition, however, while counsel indicated at the hearing that
21 Gregory Village did not contest that damages were limited to one year prior to the date the
22 complaint was filed, the court disagrees that this is a pleading issue.

23       6.    Trespass claim

24       Chevron and M B Enterprises argue that the cause of action for trespass should be
25 dismissed for failure to state a claim.  In general, Chevron and M B Enterprises assert that
26 this claim is not pled in accordance with the requirements of Rule 8, because the complaint
27 fails to allege facts sufficient to support the claim.

28       CCCSD contends that the cause of action for trespass fails because it is not pled

with particularity as required under the California Tort Claims Act, and because the District is immune under Government Code § 815. Gregory Village does not oppose CCCSD's motion.

Under California law, "[a] trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." Wilson v. Interlake Steel Co., 32 Cal. 3d 229, 233 (1982) (citation omitted). A plaintiff asserting a claim for trespass must have a possessory interest in the land at issue; mere ownership is not sufficient. Dieterich Int'l Truck Sales, Inc. v. J. S. & J. Servs., Inc., 3 Cal. App. 4th 1601, 1608-10 (1992).

"The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." Cassinos v. Union Oil Co., 14 Cal. App. 4th 1770, 1778 (1993) (citation omitted) (trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate). A trespass "may include wrongful entry or invasion by pollutants." Martin Marietta Corp. v. Insurance Co. of North America, 40 Cal. App. 4th 1113, 1132 (1995).

The motion is GRANTED as to the trespass claim against Chevron and M B Enterprises. The dismissal is with leave to amend, to allege facts supporting the elements of the claim (unauthorized entry onto the land of one with a possessory interest in the land). The motion is also GRANTED as to the trespass claim asserted against the District, with prejudice, based on Gregory Village's lack of opposition.

7. Waste claim

Chevron and M B Enterprises argue that the cause of action for waste should be dismissed because it is time-barred. Claims for waste are subject to a three-year statute of limitations. Cal. Civ. P. Code § 338(b) (damage to real property). The statute of limitations is tied to the real property and is not renewed when a new owner acquires the land and discovers the injury. Beck Dev. Co. v. Southern Pac. Transp. Co., 44 Cal App. 4th 1160, 1216 (1996). Plaintiff responds that the running of the statute of limitations was tolled by operation of the discovery rule.

CCCSD contends that the cause of action for waste fails because it is not pled with

particularity as required under the California Tort Claims Act, and because the District is immune under California Government Code § 815.  Gregory Village does not oppose CCCSD's motion.

The motion is GRANTED as to the trespass claim against Chevron and M B Enterprises.  The dismissal is with leave to amend, to allege facts supporting the elements of the claim, and to plead facts showing the time and manner of discovery, and the inability to have made earlier discovery despite reasonable diligence.  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005), quoted in Fodor v. AOL Time Warner, Inc., 217 Fed. Appx. 622-24, 2007 WL 81737 (9th Cir., Jan. 10, 2007); see also Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1120 (9th Cir. 1994).  The  motion is also GRANTED as to the trespass claim asserted against the District, with prejudice, based on Gregory Village's lack of opposition.

8.     Negligence claim

Chevron and M B Enterprises argue that the cause of action for negligence should be dismissed because it is time-barred, and also because the complaint fails to allege that Chevron or M B Enterprises breached a legal duty owed to Gregory Village.

Claims for negligent injury to real property are also  subject to a three-year statute of limitations.  Cal. Code Civ. P. § 338(b) (damage to real property).  The statute of limitations is tied to the real property and is not renewed when a new owner acquires the land and discovers the injury.  Beck, 44 Cal App. 4th at 1216.  Gregory Village responds that the running of the statute of limitations was tolled by operation of the discovery rule.

The elements of a cause of action for negligence are duty, breach of duty, causation, and damages.  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984-85 (1993).   The complaint does not clearly allege the existence of a legal duty owed by Chevron and M B Enterprises to Gregory Village, or facts showing the breach of any such legal duty.

The motion is GRANTED.  The dismissal is with leave to amend, to allege facts supporting the elements of the claim, and showing the time and manner of discovery, and

the inability to have made earlier discovery despite reasonable diligence.  See Fox, 35 Cal. 4th at 808, quoted in Fodor, 217 Fed. Appx. at 624, 2007 WL 81737; see also Hopkins, 33 F.3d at 1120.

**CONCLUSION**

In accordance with the foregoing, the motions are GRANTED in part and DENIED in part.

The motions by Chevron and M B Enterprises to dismiss the first (CERCLA) and fourth (HSAA) causes of action are GRANTED, as is the motion of CCCSD for a more definite statement as to the first (CERCLA) cause of action.  The motions to dismiss the second (RCRA) cause of action are GRANTED in part and DENIED in part.  The motion to dismiss the fifth (equitable indemnity) cause of action is GRANTED, without prejudice.  The motions to dismiss/strike the seventh (attorney's fees) cause of action are GRANTED, without leave to amend, and the motion to strike the prayer for attorney's fees is DENIED. The motions to dismiss the claims for public nuisance, trespass, waste, and negligence are GRANTED, with leave to amend as stated above.

The amended complaint shall be filed no later than August 24, 2011.  Any responsive pleading shall be filed no later than 28 days after the filing of the amended complaint.  If the pleadings are not settled by the September 22, 2011 date presently set for the initial case management conference, the parties shall submit a stipulation to continue the date of the CMC.

Finally, Chevron's objections to Gregory Village's late-filed requests for judicial notice are SUSTAINED on all grounds argued by Chevron.

**IT IS SO ORDERED.**

Dated:  August 2, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge

19