United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY VILLAGE PARTNERS, L.P.,

    Plaintiff,

    v.

CHEVRON U.S.A., INC., et al.,

    Defendants.

_____/

No. C 11-1597 PJH

**ORDER GRANTING MOTIONS TO DISMISS IN PART AND DENYING THEM IN PART**

Defendants' motions to dismiss certain claims asserted in the first amended complaint came on for hearing before this court on February 15, 2012. Plaintiff Gregory Village Partners, LP ("Gregory Village") appeared by its counsel Jordan Stanzler; defendant Contra Costa County Sanitary District ("the District") appeared by its counsel Kenton Alm and Sabrina Wolfson; Defendant M B Enterprises appeared by its counsel Jack Provine; and defendant Chevron U.S.A., Inc. ("Chevron") appeared by its counsel D. Kevin Shipp and Robert Goodman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions in part and DENIES them in part.

**BACKGROUND**

This is a case alleging claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., and the citizen suit

provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), along with various state and common law claims.

The background of the case is as set forth in the court's August 2, 2011 order regarding defendants' motions to dismiss. Briefly, Gregory Village owns real property located at 1601-1609 Contra Costa Boulevard in Pleasant Hill, California ("the Gregory Village property"), which it purchased approximately 10 years ago. At some point before Gregory Village purchased the property, a dry cleaning plant was operated on the premises, by non-party P&K Cleaners.

M B Enterprises owns real property located at 1705-1709 Contra Costa Boulevard ("the MB/Chevron property"), which it purchased in March 2003 from Chevron. Chevron purchased the property in 1986, at which time it consisted of two separate parcels – the Northern parcel and the Southern parcel. Prior to purchasing the two parcels, Chevron had leased the Northern Parcel, from approximately 1950 until 1986. During that time, there was a Chevron service station on the property. A dry cleaning plant was operated on the Southern Parcel. Prior to selling the MB/Chevron property to M B Enterprises, Chevron combined the two parcels. M B Enterprises presently operates a Chevron service station on the property.

The MB/Chevron property connects with a sewer line that runs northward and downstream past the Gregory Village property, and into the residential neighborhood that lies to the north of the Gregory Village property ("the Neighborhood"). The sewer line is owned and/or operated by the District.

Gregory Village alleges that chlorinated solvents, including tetrachlorethene (PCE) and trichlorethylene (TCE) and their breakdown products, as well as petroleum hydrocarbons and related materials and their breakdown products, have been detected in groundwater and soil vapor on or near the Gregory Village property.

Gregory Village asserts that the contamination of its property primarily emanates or originates from the MB/Chevron property. Gregory Village asserts that a leaking underground storage tank was removed from the Northern parcel of the Chevron/MB

property in 1986. According to Gregory Village, testing of the soil, soil vapor, and groundwater in the vicinity of the tank's former location, which has occurred since the removal of the tank, has revealed the presence of PCE and TCE, and petroleum hydrocarbons. Gregory Village alleges that the contaminants have "migrated" from the area where the tank was formerly located, to the Gregory Village property in groundwater (which flows downhill from the Chevron/MB property).

Gregory Village also alleges that over time, contaminants have entered the sewer line that runs past its property, have traveled downstream, and have leaked out of the sewer onto or below the Gregory Village property, and that chlorinated solvents have been detected in groundwater and soil vapor in the Neighborhood, located north and west of the Gregory Village property.

Gregory Village asserts further that M B Enterprises has contributed to the contamination of the Gregory Village property and the Neighborhood by discharging petroleum products into the subsurface of the Chevron/MB property through the normal course of its operation of a service station. In 2004, Chevron submitted a site closure request to the California Regional Water Quality Control Board ("the Water Board") in 2004, seeking leave to end the environmental investigation and remediation of the Chevron/MB property with certain limited commitments. One of these commitments was to continue monitoring the contaminants that originated on the Chevron/MB property, including chlorinated solvents, and to continue monitoring the groundwater.

Gregory Village alleges that because M B Enterprises purchased the Chevron/MB property from Chevron before Chevron submitted the site closure request to the Water Board in 2004, M B Enterprises knew or should have known of the presence of the petroleum hydrocarbon and HVOC releases on the property. Gregory Village claims that M B Enterprises failed to make any effort to stop the migration of the PCE and TCE from the Chevron/MB property into the Neighborhood.

The second source of contamination, according to Gregory Village, is the former dry cleaning facility, that operated on the Southern parcel, for approximately 30 years, starting

in 1956, and which was removed prior to Chevron's purchase of the parcel in 1986. During this period, PCE was commonly used in dry cleaning operations, and Gregory Village alleges that the PCE used by the dry cleaner "may have migrated" in groundwater from the Chevron/MB property to the Gregory Village property, and "may also have traveled" in the sanitary sewer from the Chevron property to the Gregory Village property.

A third source of contamination, according to Gregory Village, is P&K Cleaners, the former dry cleaning facility that operated on the Gregory Village property. Gregory Village alleges that PCE and TCE from this dry cleaner were released onto the Gregory Village property and into the Neighborhood.

Gregory Village asserts that the Water Board requested that it investigate the groundwater and soil on its property and in the Neighborhood, because PCE, which appeared to emanate from the dry cleaner at the mall, had been detected in soil and groundwater on the Gregory Village property. To comply with this request, Gregory Village installed four groundwater monitoring wells in the Gregory Village Neighborhood in 2006/2007. PCE and TCE were detected at levels that exceeded the maximum concentration level ("MCL") in some of those wells.

Gregory Village filed the original complaint in this action on April 1, 2011, and, pursuant to an order regarding defendants' motions to dismiss, filed the first amended complaint ("FAC") on August 24, 2011. In the FAC, Gregory Village asserts ten causes of action – (1) recovery of response costs under CERCLA § 107(a)(1-4)(B); (2) improper disposal of hazardous waste and abatement of imminent and substantial endangerment, pursuant to RCRA § 6972; (3) declaratory relief under federal law; (4) response costs under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300, et seq.; (5) comparable equitable indemnification under state law; (6) declaratory relief under state law; (7) abatement of a private nuisance; (8) abatement of a public nuisance; (9) public nuisance per se; and (10) continuing trespass. The claims are asserted against all defendants, with the exception of the claim of continuing trespass, which is asserted against M B Enterprises and Chevron only.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. Id. at 94. However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949-50 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. __, 129 S.Ct. at 1950.

B. Chevron's Motion

Chevron argues that the FAC fails to state a claim against it under RCRA, and also fails to state a claim for equitable indemnity and trespass. In the alternative, Chevron

5

seeks an order requiring a more definite statement.

### 1. RCRA claim

Chevron argues that the FAC fails to state a claim under RCRA, because Gregory Village fails to allege facts supporting its legal conclusion that an "imminent and substantial endangerment" may exist.

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC Western, Inc., 516 U.S. 479, 483 (1996). Its primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" Id. (quoting 42 U.S.C. § 6902(b)); see Hinds Investments, L.P. v. Angioli, 654 F.3d 846, 850 (9th Cir. 2011).

To assert a claim against Chevron under RCRA's citizen suit provision, Gregory Village must plead facts showing that Chevron is a "past or present . . . owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the . . . handling, storage, treatment, transportation, or disposal" of the solid or hazardous waste. 42 U.S.C. § 6972(a)(1)(B). In addition, however, Gregory Village can pursue its citizen-suit provision "only upon a showing that the solid or hazardous waste at issue may present an imminent and substantial endangerment to health or the environment." Meghrig, 516 U.S. at 484-86 (citation and quotations omitted).

Here, Chevron asserts, Gregory Village alleges only that Chevron contributed to the disposal of hazardous waste on the Chevron/MB property, which may present an imminent and substantial endangerment to health or the environment due to the migration of this hazardous waste to the Gregory Village property and to the Neighborhood. Chevron contends that it is not clear whether Gregory Village contends that the potential endangerment exists on the Gregory Village property, in the Neighborhood, or both, but that in any event, Gregory Village has failed to allege sufficient facts to support its legal conclusion that an imminent and substantial endangerment may exist.

For example, Chevron argues that Gregory Village has not alleged that someone or something may be exposed to a risk of harm by the contamination if remedial action is not taken at the Gregory Village Property, and also has not alleged that groundwater is or definitely will be used for drinking.  Thus, Chevron asserts, there are no factual allegations to support the legal conclusion that an imminent and substantial endangerment may exist on the Gregory Village property.

With regard to the Neighborhood, Chevron notes that Gregory Village alleges in the FAC that under the oversight of the Water Board, it has already identified and addressed the potential risk of harm in the Neighborhood by installing groundwater monitoring wells; completing investigation and testing of soil vapor, as well as individual properties and residences in the Neighborhood; and installing systems beneath certain residences to reduce the concentrations of PCE and benzene in indoor air.

Chevron argues that these allegations, if accepted as true, lead to the conclusion that a potential imminent and substantial endangerment may have existed in the past in the Neighborhood, but that Gregory Village has already taken the necessary action to address the risk of harm from exposure to the alleged contamination through its installation of the systems to remove soil vapor under the structures.

Chevron contends that the language of RCRA § 6972(a)(1)(B) precludes suits after the contamination has been ameliorated because the "imminent danger to health or the environment" is no longer present.  Thus, Chevron argues, Gregory Village does not have a viable claim under RCRA, as there is no present threat, no necessity for action, and no exposure to risk of harm.

As noted above, RCRA permits a private party to bring suit only upon a showing that the solid or hazardous waste at issue "may present an imminent and substantial endangerment to health or the environment."  In Meghrig, the Supreme Court stated,

> The meaning of this timing restriction is plain:  An endangerment can only be "imminent" if it "threaten[s] to occur immediately," Webster's New International Dictionary of English Language 1245 (2d ed.1934), and the reference to waste which "may present" imminent harm quite clearly excludes waste that no longer presents such a danger.

Id., 516 U.S. at 485-86. That is, "there must be a threat which is present now, although the impact of the threat may not be felt until later." Id. (citing Price v. United States, 39 F.3d 1011, 1019 (9th Cir. 1994)).

Although the Meghrig Court was considering the question whether RCRA's citizen suit provision allows a plaintiff to seek compensation for past cleanup efforts, the court finds the language regarding "imminent endangerment" is relevant here. Under the terms of the statute, that might be endangerment to human health, or endangerment to the environment. In addition, as noted above, the plaintiff must also allege that the defendant "contributed to" the endangerment.

Chevron's arguments appear to be focused more on whether Gregory Village has provided "proof" for its claim, rather than whether there are sufficient facts pled to make out a "plausible" claim. Chevron may well be correct in its analysis of the viability of this claim, but the court finds that dismissal at this stage would be inappropriate. Gregory Village has alleged in some detail that there is groundwater contamination under its property, that the contamination migrated there from the Chevron property, and that Chevron "contributed to" the contamination by owning the property where a service station was operated. The court finds that this is sufficient to allege imminent endangerment, at least to the environment, and the motion is DENIED as to this part of the claim.

The allegations re endangerment to human health are less supportive of the claim, as there is no assertion that the groundwater is presently being used as a source of drinking water, or that it is likely to be used as a source of drinking water in the immediate future. Gregory Village also alleges claims relating to "vapor" endangerment in "the Neighborhood," but it is not clear under what theory Gregory Village is making claims about property it does not own. Nevertheless, for purposes of the present motion, the court finds that Gregory Village has adequately stated a RCRA claim against Chevron.

2. Equitable indemnity claim

Chevron asserts that the FAC fails to allege sufficient facts to support a claim for

equitable indemnity, because it does not allege that Gregory Village has suffered a loss through payment of an adverse judgment or settlement.

The California Supreme Court has consistently ruled that a cause of action for indemnity does not accrue until after the indemnitee has suffered a loss through payment of an adverse judgment or settlement. See Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal. 4th 100, 110 (1994); Valley Circle Estates v. VTN Consolidated, Inc., 33 Cal. 3d 604, 611 (1983); City of San Diego v. U.S. Gypsum Co., 30 Cal. App. 4th 575, 587 (1994).

The court finds that the motion must be GRANTED. A similar motion was filed by the District with regard to the original complaint, and it was granted on the basis that the claim was premature.

3. Trespass claim

Chevron contends that the FAC fails to allege sufficient facts to support a claim for trespass. In its cause of action for trespass, Gregory Village alleges that defendants caused the wrongful entry of pollutants onto land owned by Gregory Village. FAC ¶ 192. A trespass is "an invasion of the interest in the exclusive possession of land, as by entry upon it." Wilson v. Interlake Steel Co., 32 Cal. 3d 229, 233 (1982) (citation omitted). A plaintiff asserting a claim for trespass must have a possessory interest in the land at issue. Mere ownership is not sufficient. See Dieterich Int'l Truck Sales, Inc. v. J.S. & J. Services, Inc., 3 Cal. App. 4th 1601, 1608-09 (1992). Here, Gregory Village does not allege that it has a possessory interest in this land.

The court finds that the motion must be GRANTED. In the August 2, 2011 order dismissing the original complaint, the court cited cases standing for the proposition that a claim of trespass can be asserted only by a plaintiff with a possessory interest, and that a mere ownership interest is not sufficient. The cause of action that can be asserted by a plaintiff with a claim of damage to its ownership interest is a claim for waste.

It is true that the court in Smith v. Cap Concrete, 133 Cal. App. 3d 769 (1982) allowed a claim of trespass to proceed. However, the court in that case clearly indicated

that while the claim was technically labeled "trespass," it was really a claim of waste because the plaintiff was asserting injury to its ownership interests. Id. at 774-76. Here, Gregory Village did allege a claim for waste, but the court previously found that the original claim was not adequately pled in the original complaint, and also found that it appeared to be time-barred. Gregory Village did not attempt to amend that claim in the FAC.

C.  MB Enterprises' Motion

MB Enterprises argues that the FAC fails to state a claim against it under RCRA, and also fails to state a claim for equitable indemnity, private nuisance, public nuisance, public nuisance per se, and trespass.

1.  RCRA claim

M B Enterprises asserts that the FAC fails to allege facts sufficient to state a claim against it under RCRA, as there are no allegations that M B Enterprises was a generator or that it contributed to the disposal of hazardous waste.

M B Enterprises contends that it is apparent from the allegations in the FAC that all the alleged environmental contamination occurred before March 2003, the date that M B Enterprises purchased the Chevron property from Chevron, and that the most that is alleged is that it is the "owner and operator of a facility that has contaminated and continues to contaminate the Gregory Village Property and the neighborhood." See FAC ¶ 39-41. M B Enterprises argues that this is insufficient to state a claim, and also asserts that Gregory Village fails to allege facts supporting its legal conclusion that an imminent and substantial endangerment may exist. Here, M B adopts Chevron's arguments.

The court finds that the motion must be DENIED. As with the claim asserted against Chevron, the FAC adequately states a claim against M B Enterprises, at least based on the alleged contamination of the groundwater.

2.  Equitable indemnity claim

M B Enterprises argues that the fifth cause of action fails to allege facts sufficient to state a claim for comparative equitable indemnity, for the same reasons argued by Chevron. The motion is GRANTED, on the basis that the claim is premature.

### 3. Nuisance claims

M B Enterprises contends that the seventh cause of action fails to allege facts sufficient to state a claim against it for private nuisance, for public nuisance, for public nuisance per se, or for trespass, because there are no facts pled showing that it created or assisted in the creation, or that it had any involvement in the trespass.

The court finds that the motion must be GRANTED. Under the common law of nuisance, both the party who maintains the nuisance, and those who create or assist in its creation, are responsible for the ensuing damages, but only those defendants who had taken affirmative steps towards the discharge of hazardous solvents could be subjected to liability (not those who had merely placed the solvents in the stream of commerce. City of Modesto Redev. Agency v. Superior Court, 119 Cal. App. 4th 28, 38-41 (2004).

Under this analysis, the allegations are inadequate because they fail to allege that M B Enterprises was actively involved in, or assisted in, the creation of the alleged nuisance. The causes of action for private nuisance and public nuisance per se do not even mention M B Enterprises by name, referring only to "each defendant" or to "defendants" generally. See FAC ¶¶ 161-172, 185-188. The cause of action for public nuisance does mention M B Enterprises, but asserts only that it "created a public nuisance by causing or permitting the continued discharge of contaminants from its property to the Gregory Village Property and to the neighborhood beyond the Gregory Village Property." FAC ¶ 182.

In addition, in the "general" allegations, Gregory Village asserts that M B Enterprises is the current owner of the MB/Chevron property, having acquired it in March 2003; that it operates a service station and car wash selling Chevron-branded products; and that it is the owner and operator of a facility that has contaminated and continues to contaminate the Gregory Village property and the neighborhood." FAC ¶¶ 39-41.

Gregory Village also cites the July 20, 2011, letter from the Water Board, stating that it has determined that M B Enterprises "is considered a suspected discharger because it is the current property owner of 1705 Contra Costa Boulevard, FAC ¶ 86, and alleges that sampling locations show the presence of MTBE in groundwater, downgradient of the

11

MB/Chevron property, and that MTBE "is a gasoline additive that originated from the operations of Chevron and/or MB Enterprises," FAC ¶ 87.

Nevertheless, the court finds these allegations inadequate to state a claim. The dismissal is with leave to amend, to allege facts against M B Enterprises, showing that it created or assisted in the creation of the alleged nuisance.

### 4. Trespass claim

M B Enterprises asserts that there are no facts pled in the FAC showing that it created or assisted in the creation of, or that it had any involvement in, the alleged trespass, or that it tortuously placed anything on Gregory Village's property. M B Enterprises asserts further that Gregory Village failed to comply with the court's order that it allege facts showing unauthorized entry onto the land of one with a possessory interest in the land, and has again alleged only an ownership interest.

The court finds that the motion must be GRANTED, for the reasons stated above, with regard to Chevron's motion.

### D. The District's Motion

The District contends that the FAC fails to state a claim against it for relief under CERCLA or RCRA, and also fails to state a claim for nuisance. The District also asserts that the FAC should be dismissed to the extent that it seeks to recover for contamination originating from the Gregory Village property, or that Gregory Village should be required to provide a more definite statement of its claims regarding the contamination originating from the Gregory Village property.

### 1. CERCLA claim

The four classes of persons that are subject to liability under a CERCLA § 107 response cost claim are (1) the current owner or operator of a facility, (2) any person who owned or operated a facility at the time of the disposal of the hazardous substance, (3) any person who arranged for disposal or treatment, or for transport for disposal or treatment, and (4) any person who accepts or accepted hazardous substances for transport to sites selected by such person. 42 U.S.C. § 9607(a).

Gregory Village alleges that the District is liable as an owner/operator of the sewer line, and also as an "arranger" and a "transporter." FAC ¶ 127. The District does not seek dismissal of the claim as to "owner/operator" liability, but it does assert that the FAC fails to state a claim based on "arranger" or "transporter" liability.

Under CERCLA, an "arranger" is "any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances." 42 U.S.C. § 9607(a)(3). The District asserts that it does not qualify as an "arranger" because the FAC does not allege that it ever took any "intentional steps" to dispose of the hazardous substances at issue. The District argues that its conduct was passive, and that the FAC alleges only that others placed the hazardous substances in the sewer line. The District asserts that even had it known that its sewers were being used to transport hazardous waste, such knowledge is insufficient to prove that it "planned for" the disposal of said hazardous waste – and thus, it cannot be considered an "arranger" as alleged in the FAC.

Under CERCLA, a "transporter" is "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites, selected by such person, from which there is a release, or a threatened release." 42 U.S.C. § 9607(a)(4). The District contends that the FAC does not adequately allege "transporter" liability because there are no allegations that the District agreed to "accept" hazardous substances or that it "chose the disposal site," both of which are essential to a claim of "transporter" liability as defined by the statute.

The court finds that the motion must be GRANTED. The FAC does not adequately plead facts sufficient to show either "arranger" or "transporter" liability. The District installed and maintained a sewer line, and imposed a fee on property owners for access to the sewer line. However, there is no allegation that the fee was assessed only on Chevron or M B Enterprises (or any other particular property owner) and not on all property owners, and there is also no allegation that the fee was assessed in connection with some grant of permission or authorization to any property owner to discharge hazardous substances into

1  the sewer line. The only allegation is that others deposited the hazardous substances in
2  drains that led to the sewer line. Thus, based on these allegations, the District's
3  involvement was limited to owning the sewer line.

4  Thus, for the reasons argued by the District, there are no facts pled showing that the
5  District "arranged" for the disposal or treatment of hazardous substances, as required
6  under CERCLA § 107(a)(3). See Burlington Northern & Santa Fe Ry. Co. v. United States,
7  129 S.Ct. 1870, 1879-80 (2009) (mere knowledge that product will be disposed of is
8  insufficient to prove arranger liability; entity must intend that product be disposed of during
9  transfer process). Nor are there any facts pled showing that the District accepted any
10 hazardous substances for "transport" to disposal or treatment facilities, as required under
11 CERCLA § 107(a)(4).

12 Because the court is not persuaded that Gregory Village can allege facts sufficient to
13 support arranger or transporter liability as to the District, the dismissal of this claim is
14 without leave to amend.

15  2.  RCRA claim

16 The District contends that the FAC fails to state a claim under RCRA, because there
17 are no facts pled showing that conditions on its property or the Neighborhood may present
18 an imminent and substantial endangerment, and no facts pled showing any active or
19 affirmative conduct by the District – i.e., that the District had any measure of control over
20 the waste at the time of its disposal or was otherwise actively involved in the disposal
21 process.

22 As with the claims against Chevron and MB Enterprises, the court finds that Gregory
23 Village has stated sufficient facts to show imminent and substantial endangerment to the
24 environment (if not to human health). However, the FAC does not allege facts sufficient to
25 show active or affirmative conduct or participation in the alleged contamination by the
26 District. See Hinds, 654 F.3d at 851 (statute "permitting suits against 'any person . . . who
27 has contributed or who is contributing' to the handling, storage, treatment, transportation or
28 disposal of hazardous waste . . . requires that a defendant be actively involved in or have

14

some degree of control over the waste disposal process to be liable under RCRA").

Accordingly, the motion to dismiss is GRANTED. The dismissal is with leave to amend to plead facts showing active or affirmative conduct by the District – in particular, that the Districtd had some measure of control over the waste at the time of its disposal or that it was otherwise involved in the disposal process.

       3.      Nuisance claims

The District argues that the FAC fails to state a claim for nuisance per se, for public nuisance, or for private nuisance. With regard to nuisance per se, the District asserts that under California Government Code § 815, a public entity cannot be liable for damages unless there is a specific statute subjecting it to liability, and the complaint identifies the applicable statute.

Here, the District argues, apart from alleging common law nuisance, Gregory Village appears to be attempting to state a separate theory of liability, but fails to identify a statutory basis for the claim.

With regard to the claims for public/private nuisance, the District argues that Gregory Village has not adequately alleged that the District created or assisted in the creation of the nuisance.

The motion is DENIED as to the argument regarding the nuisance per se claim. In Kempton v. City of Los Angeles, 165 Cal. App. 4th 1344, 1349 (2008), the court held that "[g]overnment liability under Government Code section 815 et seq. may be based upon public nuisances per se," citing authority defining nuisance to constitute an adequate statutory basis for government liability.

With regard to whether the District assisted in the creation of a public and/or private nuisance, and whether the FAC adequately alleges that the District had control over the alleged discharge of contaminants, Gregory Village's position appears to be that the District "knew" it was transporting hazardous waste, although there are no facts pled to support that allegation.

Gregory Village also asserts that the District had control over the discharge because

15

it "failed to maintain" the sewer line. However, unless the claim is that the District knew the sewer was leaking and failed to repair it (which is not entirely clear), then the claim appears more akin to one for negligence.

Under California law, a defendant may be liable for nuisance based on a theory of intentional acts, negligent acts, or strict liability.

> Although the central idea of nuisance is the unreasonable invasion of this interest [in the use and enjoyment of property] and not the particular type of conduct subjecting the actor to liability, liability nevertheless depends on some sort of conduct that either directly and unreasonably interferes with it or creates a condition that does so. . . . 'The invasion may be intentional and unreasonable. It may be unintentional but caused by negligent or reckless conduct; or it may result from an abnormally dangerous activity for which there is strict liability. On any of these bases the defendant may be liable. On the other hand, the invasion may be intentional but reasonable; or it may be entirely accidental and not fall within any of the categories mentioned above. In these cases there is no liability.'

Gdowski v. Louie, 84 Cal. App. 4th 1395, 1408 (2000) (quoting Lussier v. San Lorenzo Valley Water Dist., 206 Cal. App. 3d 92, 100 (1988)).

Here, the asserted basis for the liability is not clear. If the theory is that the action was intentional, Gregory Village must allege facts showing that the District knew about the discharge of hazardous materials and had some active involvement in the discharge. If the claim is based on a theory of negligence, Gregory Village must allege the existence of a duty on the part of the District to prevent or abate the nuisance. If the theory is one of strict liability, Gregory Village must allege that the District was engaging in some abnormally dangerous activity.

Accordingly, the motion is GRANTED, with leave to amend to plead facts supporting the elements of each specific nuisance claim, as well as the basis for the theory of liability, and also plead facts showing that the District created or assisted in the creation of the alleged nuisance.

4. Claims for contamination originating from Gregory Village property

Finally, to the extent that Gregory Village seeks to recover for contamination originating from its property, caused by the operations of P&K Cleaners, any such claim must be pled in a separate cause of action.

**CONCLUSION**

In accordance with the foregoing, Chevron's motion to dismiss the RCRA claim is DENIED; its motion to dismiss the equitable indemnity claim is GRANTED, without leave to amend; and its motion to dismiss the trespass claim is GRANTED, without leave to amend.

M B Enterprises' motion to dismiss the RCRA claim is DENIED; its motion to dismiss the nuisance claims is GRANTED, with leave to amend; and its motion to dismiss the trespass claim is GRANTED, without leave to amend.

The District's motion to dismiss the CERCLA claim as to "owner/operator" liability is GRANTED, without leave to amend; its motion to dismiss the RCRA claim is GRANTED, with leave to amend; and its motion to dismiss the nuisance claims is DENIED in part and GRANTED in part, with leave to amend.

To the extent Gregory Village is making a claim against any defendant based on contamination from P&K Cleaners operations (originating on the Gregory Village property), it must allege the claim as part of a separate cause of action in the amended complaint.

The second amended complaint shall be filed no later than April 11, 2012. If defendants file an answer to the second amended complaint (as opposed to another motion to dismiss), the parties shall contact the courtroom deputy to schedule a case management conference.

**IT IS SO ORDERED.**

Dated: March 12, 2012

PHYLLIS J. HAMILTON
United States District Judge